John C. ARP and Mildred K. Arp, as Trustees for the Use and Benefit of John C. Arp and Mildred K. Arp, husband and wife, Appellants (Defendants below),

v.

STATE HIGHWAY COMMISSION of Wyoming, Appellee (Plaintiff below).

No. 4770.

Supreme Court of Wyoming.

Aug. 12, 1977.

Robert L. Duncan, Cheyenne, for appellants.

V. Frank Mendicino, Atty. Gen., Glenn A. Williams, Senior Asst. Atty. Gen., Daniel E. White, Asst. Atty. Gen., Cheyenne, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

McCLINTOCK, Justice.

John C. Arp and Mildred K. Arp, Trustees (Arp), appeal from Judgment and Decree Granting Possession, entered by the district court of Laramie, County, Wyoming, in a condemnation proceeding brought by the State Highway Commission of Wyoming (Commission). The proceeding was brought to obtain title to and possession of certain land belonging to Arp, situated in the City of Cheyenne, Wyoming, it being the apparent intention of the Commission to use these lands as part of a limited-access highway facility connecting Interstate Highway 80 with downtown Cheyenne. Arp contested the necessity and good faith of the taking and now seeks review of the adverse ruling without completion of the proceeding. Following the docketing of this appeal and the filing of briefs upon the merits of the case the Commission filed motion to dismiss upon the ground that there was no appealable order. We permitted the matter to be orally argued on all questions but after consideration are convinced that the order herein entered was not a final order within the meaning of our rule and the previous decisions of this court.

Our present Rule 72(a), W.R.C.P. provides in pertinent part:

"*Rule 72. General Provisions.* (a) *'Final Order' Defined.* A final order is: (1) an order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment; (2) an order affecting a substantial right, made in a special proceeding, or

upon a summary application in an action, after judgment; * * *."[1]

■ Two precedents of this court clearly hold that an order for taking in a condemnation proceeding is not an appealable order: *Hardendorf v. Board of County Commissioners of Fremont County,* 73 Wyo. 1, 267 P.2d 747 (1954), and *Big Horn Coal Co., Inc. v. Sheridan-Wyoming Coal Co.,* 67 Wyo. 300, 224 P.2d 172 (1950). The only question concerning the views therein expressed is that neither case specifically refers to § 3–5301, W.C.S. 1945, which became a part of our Code of Civil Procedure by Ch. 60, § 778, S.L. of Wyoming, 1886. This section was taken from the Ohio Code. Despite the fact that there is no specific mention of the statute in question, we hold that the two above-mentioned cases must stand as a construction of the law of our statute at the time of the adoption of the rules, and we do not think that we should now reach a different result by saying that this court was not aware of the statutory definition of final order because it did not specifically mention the same statute.

■ As indicated in *Big Horn Coal Co., Inc.,* supra, 67 Wyo. at 310, 224 P.2d at 176, this court was familiar with the treatment given by the Supreme Court of Ohio to the question of whether an order determining the preliminary questions involved in an eminent-domain proceeding (including the

necessity) was a final order, and refers at some length to *Ornstein v. Chesapeake & O. Ry. Co.,* 123 Ohio St. 260, 174 N.E. 772 (1931), which in turn referred to the earlier Ohio case of *Pittsburgh, Cleveland & Toledo Rd. Co. v. Tod,* 72 Ohio St. 156, 74 N.E. 172, in which it had been held that "determination of preliminary questions by the probate judge is not a final judgment, any more than is an order sustaining or overruling a demurrer." In the later case constitutional questions were raised as to a procedure that permitted the condemnor to appeal from an order denying the right to take by condemnation, while at the same time refusing to permit the condemnee to appeal from an order for such condemnation and whether this was a denial of equal protection of law. The claim was rejected by the Ohio court and appeal from this decision to the Supreme Court of the United States was dismissed for want of jurisdiction in *Ornstein v. Chesapeake & Ohio Ry. Co.,* 284 U.S. 572, 52 S.Ct. 14, 76 L.Ed. 497. *Grays Harbor Logging Co. v. Coats-Fordney Logging Co.,* 243 U.S. 251, 255–257, 37 S.Ct. 295, 61 L.Ed. 702, an eminent-domain case where it was sought to review ruling of a state supreme court that a plaintiff had a right to exercise the power of eminent domain, was cited and it was there said that the judgment was not a final judgment. We find this to be generally the law[2] and while we appreciate that

---

1. As originally adopted in 1957 as part of the Wyoming Rules of Civil Procedure, Rule 72(a) was a direct tracing of the then-existing statute, § 3–5301, W.C.S. 1945, and read as follows:

   "*Rule 72. General Provisions.* (a) 'Final Order' Defined. An order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding, or upon a summary application in an action, after judgment, is a final order which may be vacated, modified or reversed, as provided in these rules."

   The only change from the statute was the substitution of the closing words, "these rules" for the statutory words, "this chapter." The rule has been amended since its original enactment but in no way that is pertinent to the pending case.

2. E. g., *Luxton v. North River Bridge Co.,* 147 U.S. 337, 13 S.Ct. 356, 37 L.Ed. 194 (1893); *Southern Ry. Co. v. Postal Tel. Cable Co.,* 93 F. 393 (4th Cir. 1899); *Cordova v. City of Tucson,* 15 Ariz.App. 469, 489 P.2d 727 (1971); *Burlington & C. R. Co. v. Colorado Eastern R. Co.,* 45 Colo. 222, 100 P. 607, 16 Ann.Cas. 1002 (1909); *Edwards v. Miami Shores Village,* 160 Fla. 923, 37 So.2d 320 (1948); *Chicago Land Clearance Comm. v. White,* 409 Ill. 290, 100 N.E.2d 760 (1951); *Freshour v. Logansport & Pleasant Grove Turnpike Co.,* 104 Ind. 463, 4 N.E. 157 (1886); *State ex rel. Burnquist v. Fuchs,* 212 Minn. 452, 4 N.W.2d 361 (1942); *St. Joseph Terminal R. Co. v. Hannibal & St. J. R. Co.,* 94 Mo. 535, 6 S.W. 691 (1888); *Great Neck Water Authority v. Citizens Water Supply Co.,* 12 N.Y.2d 167, 237 N.Y.S.2d 331, 187 N.E.2d 786 (1962); *American Union Telegraph v. Wilmington, Columbia and Augusta R.R.,* 83 N.C. 420 (1880); *Wrightsman v. Southwestern Natural Gas Co.,* 173 Okl. 75, 46 P.2d 925 (1935); *Sink-*

there may be a distinction between a final judgment and a final order, we think that this court was not concerned with the distinction in *Big Horn Coal Co.* or *Hardendorf.*

▮ Just as it is unfortunate that this court did not discuss § 3–5301 (which was later incorporated in the rules as 72(a)), it is also unfortunate that neither of the Ohio cases mentioned discusses the Ohio counterpart or our statute-rule. However, we think that the ruling of this court that the order disposing of the preliminary matters is not an appealable order is clearcut and § 3–5301 must have been incorporated into the rules in the context that an order of taking in an eminent-domain proceeding was not an appealable order. We should not now change that ruling.

Arguments pro and con can be made, but the possibility that the condemnor may occupy and use the premises while its right to take remains in dispute should not require us to reconsider what is the clearly established rule of this jurisdiction.

The motion to dismiss the appeal is sustained.

ROSE, Justice, specially concurring.

While I concur in the dismissal of this appeal, persuaded by the authorities and reasoning of the majority opinion, I am troubled by the implications thereof. I am hopeful that district courts will remain constantly concerned with the probable and practical mootness that goes with the condemnor taking and imposing the improvement upon the property before the owners' appellate rights have ripened. When the highway has been constructed, it is academic to still be litigating the taking—but this is the state of the law as I view it—inequitable as it may be.

As stated in the majority opinion, there is a "possibility that the condemnor may occupy and use the premises while its right to take remains in dispute." In the present case, this theoretically means that a limited-access highway facility could be constructed over appellants' land before they have an opportunity to have judicial review of the necessity or authority for the taking. By the time compensation is awarded, and thus an appealable order entered, it is conceivable that appellants' challenge in this respect may have become meaningless. Once constructed a highway is difficult to move.

I do not doubt the authority of the district court to enter an order granting possession to a condemnor prior to determination of damages. The statutes and rules of this state contemplate such a procedure. See § 1–754, W.S.1957; § 1–793, W.S.1957; § 1–792(b), W.S.1957, 1977 Interim.Supp.; and Rule 71.1(e), W.R.C.P. The decision to grant immediate possession in the condemnor rests in the sound discretion of the district court. Given a possibly severe effect on property rights, however, such discretion must be exercised only after due circumspection. My concern with such an occurrence is somewhat lessened by the remedies which I see as available to aggrieved landowners—aside from the knowledge that compensation at some time will be awarded. First, in appropriate cases I believe resort may be had to the provisions of Rule 54(b), W.R.C.P. See 12 Wright and Miller, Federal Practice and Procedure: Civil § 3042, at 96; and *Burkhart v. United States,* 9 Cir. 1954, 210 F.2d 602. Second, I believe that a stay of proceedings may be sought by a condemnee under appropriate circumstances. Such is not the case under the Federal Declaration of Taking Act, (40 U.S.C.A. §§ 258a through 258e) and under certain state laws. See 40 U.S.C.A. § 258b; and *Wright v. State,* 204 Okl. 380, 230 P.2d 462,

ing *Spring Water Co. v. Gring,* 257 Pa. 340, 101 A. 732 (1917); *Williams v. McMinn County,* 207 Tenn. 585, 341 S.W.2d 730 (1960); *Ludlow v. City of Norfolk,* 87 Va. 319, 12 S.E. 612 (1891); *Wheeling Bridge & Terminal Ry. Co. v.*

*Wheeling Steel & Iron Co.,* 41 W.Va. 747, 24 S.E. 651 (1896); and *Manns v. Marinette & Menominee Paper Co.,* 205 Wis. 349, 235 N.W. 426 (1931), rehearing den. 205 Wis. 349, 351, 238 N.W. 624 (1931).

466 (1951). In those jurisdictions there are specific statutory provisions which preclude an appeal from operating to delay the prosecution of work on the condemnee's property. I could find no such statute or rule in Wyoming and would, therefore, assume that such a procedure is available in this state. See *City of Portland v. Anderson*, 248 Or. 201, 432 P.2d 1020 (1967). By this recitation, I do not foreclose the possibility that there may be other remedies available to a condemnee which will temper the potential harshness of our ruling in this and other cases.

With the preceding observations in mind, I concur in the dismissal of this appeal.

RAPER, Justice.

I dissent.

I am convinced that the majority has compounded a mistake made in two long-standing cases, the second adopting the boner made in the first. We now have three of the same ilk. At the outset, I must freely concede and wholeheartedly endorse the principle of stare decisis, that is to say, keeping to the decisions, because of its importance in maintaining a stability of jurisprudence and establishing a predictability upon which the trial judiciary, bar and public can rely. Without the tool of precedent, judges and lawyers would be helpless and the state of jurisprudence would be a mess. On the other hand, the principle does not have an unyielding rigidity, requiring a court to perpetuate an inherent error though on its face, an opinion and decision has the appearance of reliability. When we dissect a case with the scalpel of close scrutiny and discover it cancerous, we should not close the incision and let it grow if a cure is possible. It is our duty to set aside a case or line of cases founded on failure to consider a controlling statute or court rule to the contrary. Courts are not infallible and as proponents of honesty, we should be the first to admit our mistakes, when found. We should not be stopped dead in the tracks of our predecessors.

The case before us is an ideal one in which to correct an error because it will permit progress to proceed, close an important phase of the case before us and not leave a question dangling, undecided. I can best explain by presenting all the facts and questions raised in this appeal, now aborted by the majority.

The court in this appeal from a final order, interlocutory as far as the whole case is concerned, in a condemnation action, was presented two questions: (1) Can the landowner appeal from the district court's intermediate ruling that a necessity for the taking had been established and the State was entitled to immediate possession before adjudication of just compensation? and (2) If there is an appealable order: (a) was the State premature in filing the condemnation action because it had not obtained a right-of-way for crossing railroad tracks? (b) was approval of the City of Cheyenne necessary before proceeding? (c) must the City of Cheyenne first vacate streets which must be closed before the State may proceed in condemnation? (d) did the State act arbitrarily and in abuse of its power to condemn land for highway purposes?

I would hold that the interlocutory appeal in this case was proper and affirm the district court on the merits.

As a part of the federal system of interstate highways, Interstate Highway 80 traverses the State of Wyoming and passes by and through the City of Cheyenne. The Wyoming State Highway Commission under its powers determined to take certain lands within the City for a limited access facility highway, known as the Cheyenne Interstate Spur, which will connect the Interstate 80 Central Avenue interchange with downtown Cheyenne at 16th Street. Part of lands necessary are owned by the defendants. Upon the filing of a complaint in condemnation by the plaintiff, State Highway Commission, the defendant landowners filed an answer contesting the necessity for the taking on the ground that the only purpose of the project was to obtain federal funds to build a railroad viaduct, that the State had no agreement with the Union Pacific Railroad to cross its tracks, the City of Cheyenne had not ap-

proved the project, streets had not been vacated, the project did not in various respects meet Federal Highway Administration standards and that the plaintiff's conduct was arbitrary, capricious and unlawful.

The Commission applied to the court for immediate possession. A hearing was held and the trial judge made findings of fact and conclusions of law which, after preliminary and introductory provisions, declared the project an integral part of and necessary to the Interstate Highway system and that the defendants' land must be taken in order to construct the project. The district court also found that the project conformed to all necessary standards, both State and Federal, and that the plaintiff had performed all required conditions precedent. A judgment and decree granting possession was made and entered and the State deposited with the clerk of the district court the sum of $50,085.00, as estimated, just compensation required by the decree. The money has been available ever since for withdrawal by defendants.

Notice of appeal was given. Further proceedings, as provided by Rule 71.1, W.R. C.P., leading to the determination and allowance of an ultimate award of just compensation have not been taken. The entire project has been stalled because of the district court procedures here outlined and this appeal.

### INTERLOCUTORY APPEAL

Rule 71.1(a), W.R.C.P., provides that "The Wyoming Rules of Civil Procedure govern the procedure for the condemnation of real and personal property under the power of eminent domain, except as otherwise provided in this rule." An appeal to this court may only be taken from a judgment rendered or final order of the district court. Rule 72(a), W.R.C.P., in pertinent part, defines a final order as "(2) an order affecting a substantial right, made in a special

proceeding, * * *." The last-quoted provision of the current Rules had its roots in § 778, Ch. 60, Laws of Wyoming, 1886. At the time of the adoption of the Wyoming Rules of Civil Procedure, that language was a part of § 3–5301, W.C.S.1945, carried over without change from the date of enactment.[1]

*Hardendorf v. Board of County Commissioners of Fremont County*, 1954, 73 Wyo. 1, 267 P.2d 747, citing *Big Horn Coal Co. v. Sheridan-Wyoming Coal Co.*, 1950, 67 Wyo. 300, 224 P.2d 172, relied upon by the majority, held that any order in a condemnation case short of the final adjudication of just compensation was not appealable. In the eagerness of this court, as then constituted, to promote a most desirable policy of avoiding piecemeal appeals, it completely ignored and did not even mention the statute, now Rule 72(a)(2) of this court. I would overrule the holdings of those cases as improvident.

I was quite surprised to find that in *Big Horn Coal* and *Hardendorf, supra,* no reference whatsoever was made to § 3–5301, W.C.S.1945, as it appeared in the statute books at that time. It obviously was overlooked by the court though it was specially there noticed that the rule was that interlocutory appeals will not be taken "unless a special statute otherwise provides." Not only that statute but another was in the statutes which recognized condemnation actions as special proceedings. Section 3–109, W.C.S.1945:

"Until the legislature shall otherwise provide, this code shall not affect proceedings to assess damages for private property taken for public uses, nor the proceedings under the statutes for the settlement of estates of deceased persons, nor proceedings under statutes relating to apprentices, bastardy, insolvent debtors, or any special statutory remedy not heretofore obtained by action; but such pro-

---

1. Section 3–5301, W.C.S.1945, provides as follows:

"An order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding, or upon a summary application in an action, after judgment, is a final order which may be vacated, modified or reversed, as provided in this chapter."

ceedings may be prosecuted under the code whenever it is applicable."

But even a further statutory section should have been then considered, § 3–110, W.C.S. 1945:

"Where, by general or special statute, a civil action is given, and the mode of proceeding therein is prescribed, this code shall not affect the proceedings under such statute, until the legislature shall otherwise provide; but in all such cases, as far as it may be consistent with the statute giving such action, and practicable under this code, the proceedings shall be conducted in conformity thereto. Where the statute designates, by name or otherwise, the kind of action, but does not prescribe the mode of proceeding therein, such action shall be commenced and prosecuted in conformity to this code; where the statute gives an action, but does not designate the kind of action, or prescribe the mode of proceeding therein, such action shall be held to be the civil action of this code, and proceeded in accordingly."

It is elementary law that applicable statutes be considered.

How can we in good conscience adopt a rule and then interpret it to mean something other than what it so clearly says? This is in complete conflict with the settled doctrine utilized when we view a statute. This court has often, with soundness of reason, said that where the language of a statute is plain, unambiguous and conveys a clear and definite meaning, there is no occasion and the court has no right to look for and impose another meaning. *Wyoming State Treasurer v. City of Casper*, Wyo. 1976, 551 P.2d 687; ▬▬▬ Statutes, West's Wyoming Digest. Or as so well said in *Lo Sasso v. Braun*, Wyo.1963, 386 P.2d 630, courts will not enlarge, stretch, expand or extend a statute to matters not falling within its express provision. There is no justification for this court to view its own rules in a light different than acts of the legislature.

We cannot blindly say that the taking of a citizen's property in condemnation against his will, does not affect "a substantial right." While I would not decide this case on any constitutional ground, the Wyoming Constitution, as does the Constitution of the United States, places emphasis on the protection of property. Section 6, Article I, Wyoming Constitution: "No person shall be deprived of * * * *property* without due process of law." (Emphasis added.) Section 8, Article I, Wyoming Constitution: "All courts shall be open and every person for an injury done to * * * *property* shall have justice administered without sale, denial or delay. * * * "(Emphasis added.) Section 29, Article I, Wyoming Constitution: "No distinction shall ever be made by law between resident aliens and citizens as to the possession, taxation, enjoyment and descent of *property*." (Emphasis added.) More specifically related to this case is § 33, Article I, Wyoming Constitution: "Private *property* shall not be taken or damaged for public or private use without just compensation." (Emphasis added.)

A ruling on the right to take represents the difference between the loss of property and retention. We consider that phase to be vital to the interests of the owner and the public as well. It is basic that an unauthorized project not be pursued. Whether the claim of the landowner has substance or not is immaterial but his right to make the claim is substantial. The right to take is a determination of substance specially required of the trial judge when the question is raised and one we must also make when properly presented.

Nor is there any question but what a proceeding in the exercise of eminent domain is a special proceeding couched with many variations from the usual civil action—special enough that this court has adopted a lengthy, detailed special rule to govern its procedure. Rule 71.1, W.R.C.P.

The language of Rule 72(a) under consideration was discussed with respect to its statutory ancestor at some length by Justice Potter in *Anderson v. Englehart*, 1909, 18 Wyo. 196, 202–208, 105 P. 571, 573–575, Ann.Cas. 1912C 894, 896–898. The case does not deal with condemnation and makes

no attempt to come up with a general definition of special proceedings. The most that can be gathered from the opinion is that special proceedings have a singular basis and is a term applied to proceedings which are different from the ordinary civil action in which relief is sought. The court ended up finding that the proceeding it was concerned with was out of the ordinary and recognizable as such and an interlocutory appeal allowable.

Justice Blume in *Donovan v. Owen*, 1935, 52 Wyo. 479, 76 P.2d 339, in dealing with the authority of an irrigation district to construct a project, related contract and issuance of bonds, the particular problem being whether a judge could be disqualified by affidavit to sit in a special proceeding when the statute in that respect provided that either party in a civil action could by affidavit of bias or prejudice require a presiding judge to step down and require the calling of another to preside. At that time there existed § 89–4827, Wyo.Rev.St.1931, heretofore cited and set out as § 3–109, W.C.S.1945, providing that the code of civil procedure would not affect proceedings to assess damages for taking of private property for public uses and any remedy not obtained by "action." That statute is listed as superseded upon adoption of civil rules. Rule 87, W.R.C.P. There is no comparable rule. In a nutshell, *Donovan* said that since the proceedings could not be considered an action, there was no applicable provision for a change of judge. However, the case is somewhat helpful in that the court noted that the legislature recognized drainage district matters as special proceedings. Analogizing, the legislature also at that time by the same statute recognized condemnation as a special proceeding.

This court, by the adoption of Rule 71.1, has recognized condemnation as something separate and apart from the ordinary civil action, requiring special provisions for the exercise of eminent domain. This leads me to the conclusion that under Rule 72(a) condemnation proceedings are "special proceedings."

I will not attempt to generally define "special proceeding" as applied to cases other than those in eminent domain. Research discloses many variations.[2] I would hold that an eminent domain or condemnation action instituted for the purpose of taking lands for public purposes is a special proceeding in that it utilizes distinctive procedures, not found in the ordinary civil action for judicial relief and requires extraordinary handling to accomplish its objective. It is a special proceeding historically in this state carried forward through adoption of Rule 72(a)(2), W.R.C.P., and through recognition by this court as such by Rule 71.1, W.R.C.P.

Even looking at the matter without consideration of the important fact that we have a rule permitting an appeal from the final order determining the right to take, 6 Nichols on Eminent Domain, 3d Ed., § 26.-32, pp. 26–247 and 26–248, explains very practical reasons for allowing the appeal:

"The tendency of modern jurisprudence is to extend the right of appeal in interlocutory matters when the public interests require it (that is, when the economic loss to the public by compelling the appellate courts to waste their time over points of law which may never be necessary to a final decision of a litigated case is less than will be caused by compelling trial courts and parties litigant to waste their time over the trial of issues of fact which may be rendered nugatory by an adverse decision of the appellate court on points of law), public policy requires that the appellate courts must run the risk of wasting their time. The long drawn out trial of a land damage case is a serious economic waste, if, after the verdict is reached, the appellate court decides that the petitioner had no right to condemn the land in question at all; and consequently it is held in some jurisdictions that an order of condemnation may be appealed from at once, and the questions of law upon which the validity of the taking depends finally determined before the trial upon the measure of compensa-

2. See West's Words and Phrases, Special Proceedings.

tion. \* \* \*" (See footnote 87, to text, for courts following that rule.)

Since Rule 72(a)(2) is held by the majority to be a collection of meaningless words, perhaps someone ought to try on for size, a petition for certiorari to this court for special consideration. This court has constitutional authority by way of original jurisdiction to issue writs of certiorari. Section 3, Article V, Wyoming Constitution. See Wyoming cases, Certiorari, West's Wyoming Digest. It is a discretionary writ. By way of example of such an application, see *Couse v. Canal Authority*, Fla.App.1967, 194 So.2d 301, where it was held that an order of taking following a determination that the State had authority to condemn, as in the case before us, was reviewable on certiorari. The court found justification in such a course since the subject lands were to be dug out, cleared and flooded and the landowners would not thereafter have a full and adequate remedy if it was subsequently determined that the original taking was illegal. The court held that though an appeal would be improper under its precedent, it would allow "special dispensation," grant certiorari and inquire into the legality of the taking. The landowner here has cited other similar cases; see also ☞264, Eminent Domain, West's Digest System. New worlds to explore!

Through Rule 72(a), W.R.C.P., this court has retained a long-standing exception to the usual appellate policy opposed to piecemeal appeals [3] and allows an interlocutory appeal where substantial rights are affected in special proceedings. I would hold that a substantial right is affected, condemnation is a special proceeding, an order finding the lawfulness of the taking and granting of immediate possession is an appealable final order and allow the appeal for consideration on the merits.

If this court is to dogmatically turn its head away from an apparent rule and pretend like it does not exist, then it had better take proper steps to formally rescind and remove it from Volume 2A, Wyoming Statutes, 1957.

---

**3.** Piecemeal appeals in the ordinary proceeding are undesirable and not allowed. *Knudson v.*

## THE MERITS

I would, after allowing the appeal, dispose of the merits and have done with it.

I am not aware of any requirement that the State Highway Commission acquire land and rights in land in any particular sequence nor has the court been cited to any such authority. Such perfunctory arguments should be dispatched summarily. *Clouser v. Spaniol Ford, Inc.*, Wyo.1974, 522 P.2d 1360. If the State is unable to negotiate a right-of-way over the tracks of the Union Pacific Railroad, it need only proceed in condemnation under its right of eminent domain in that direction as well. When many landowners are involved, the State may proceed with necessary acquisitions in the manner within its discretion most expedient.

Defendants contend that there should have been an approval from the City of Cheyenne pursuant to §§ 24–72 and 24–39, W.S.1957, C.1967; and a closing or vacation of certain city streets before proceeding to condemn defendants' land. If the Highway Commission had violated any specific statute pertaining to these matters, the court should, of course, have the right to interfere and prevent any such violation. *Town of Clearmont v. State Highway Commission*, Wyo.1960, 357 P.2d 470, 479. No violation is apparent. Sections 24–72 and 24–39, *supra,* are couched in permissive, not mandatory language—at least insofar as they relate to the present project. Appellants have indicated no other statutory provisions, or cogent authorities, which would indicate that any of the remaining matters are statutory conditions precedent to this condemnation action in question. Absent such statutory provisions, this court is without jurisdiction to interfere with the Commission's lawfully delegated authority to determine the necessity for and location of public highways. *Town of Clearmont v. State Highway Commission, supra,* at 479;

*Hilzer*, Wyo.1976, 551 P.2d 680; *Reeves v. Harris*, Wyo.1963, 380 P.2d 769.

*Woolley v. State Highway Commission,*
Wyo.1963, 387 P.2d 667, 672.

With respect to appellant's contention of arbitrariness and abuse of power, it was stated in *Woolley v. State Highway Commission, supra*:

" * * * that is not to say, of course, that the courts are without inherent power to inquire into such matters as *usurpation of power*, fraud or conduct tantamount to fraud; nor can it be said that under our procedural statutes a landowner, where issues are properly joined, may not obtain the aid of a court to *inquire into the use of and the necessity for the lands sought to be appropriated. * * ** But again the court's authority is not unlimited. If the determination of the commission is within its authority, has some reasonable basis, and is not arbitrary, capricious or discriminatory, the decision of the commission must stand. *Colorado Interstate Gas Co. v. Uinta Development Co.,* Wyo., 364 P.2d 655, 657; *State ex rel. Sharp v. 0.62033 Acres of Land in Christiana Hundred, New Castle County,* 10 Terry 174, 49 Del. 174, 112 A.2d 857, 859; *State v. North Star Concrete Company, Parcel Channel Change,* 265 Minn. 483, 122 N.W.2d 118, 121; *City of Trenton v. Lenzner,* 16 N.J. 465, 109 A.2d 409, 413, certiorari denied 348 U.S. 972, 75 S.Ct. 534, 99 L.Ed. 757." (Emphasis added.)

The landowners here assert the Commission abused its power by arbitrarily designating the project an "Interstate Spur," merely to get a larger contribution of federal funds to rebuild the present railroad viaduct, even though it deviates somewhat from normally-applied state highway standards. First, the record is barren of evidence to sustain this claim. In fact, the record is fully supportive of the conclusion that this project is in complete compliance with appropriate federal interstate highway standards. Second, I fail to see how this claim relates in any way to the necessity for the land acquisition.

The landowners further contend that the Commission abused its power by purchasing other rights-of-way for the project prior to required public hearings. Again, that claim is not substantiated by the evidence, indicating that all required public hearings were held. The timing of property acquisition rests in the sound discretion of the Commission, and bears no relationship to the necessity for appropriation.

Finally, landowners contend that the Commission abused its power by establishing the Interstate Spur as an access-controlled facility, when other interstate routes along Warren and Central Avenues are not so controlled. The Commission's determination in this, and all other respects, is founded on a reasonable basis and is not arbitrary, capricious or discriminatory. Its decision ought to stand.

I would have entertained the appeal and affirmed the district court. The matter would then be behind the parties, the district court and this court and the work could proceed without a pall of doubt hanging over the project.